## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO
_____

KEITH L. JACKSON, an individual
and LOUIS J. CONTENTO, an individual,

     Plaintiff,

v.                                            Civil No. 03-865 WJ/ACT

HUGH J. MCMARLIN and MARIA
T. MCMARLIN, husband and wife,

     Defendants / Third-Party Plaintiffs,

v.

FRANK W. TITONI,

     Third-Party Defendant.

## MEMORANDUM OPINION AND ORDER
## TRANSFERRING VENUE TO DISTRICT OF COLORADO

THIS MATTER comes before the Court on the Motion by Third Party Defendant Frank

W. Titoni to Change Venue and to Dismiss Third Party Complaint, filed November 18, 2003

(**Doc. 20**), and the Motion for Extension of Time to Respond to Motion for Summary Judgment

[sic], filed by Hugh and Maria McMarlin on February 2, 2004 (**Doc. 29**).  Having considered the

parties' briefs and the applicable law, I find that the Motion for Change of Venue and to Dismiss

Third-Party Complaint is granted in part, and denied in part, and that the Motion for Extension of

Time is denied as moot.

## Background

This case involves a breach of contract claim arising from an investment venture gone

sour.  According to the allegations in the Complaint, Mr. Jackson ("Jackson") invested and

entrusted a sum of $150,000.00 to Hugh and Maria McMarlin ("McMarlins") who guaranteed the investment and a 15% rate of return, and who allegedly have failed to return the principal investment plus interest as promised.  Jackson brings claims of breach of promise, fraud, false pretenses and breach of fiduciary duty against the McMarlins.  The McMarlins deny that Jackson invested money with them, and have filed a Third Party Complaint against Frank Titoni ("Titoni"). The McMarlins attribute Jackson's investment loss to the actions of Titoni, the attorney in whose trust account their funds, as well as Jackson's, had been deposited, and who absconded with these funds.  The McMarlins maintain that other than feeling "morally obligated" to help Jackson recover the loss of principal that had been transferred to Titoni's trust account, they have no legal or fiduciary duty to Plaintiff.[1]

The facts set out in the McMarlins' response to the instant motion fleshes out the details further.  According to the McMarlin's version of the story, both the McMarlins and Jackson were solicited for funds by Dr. Kevin Kondas ("Kondas"), who directed an entity called the "Tristan Group" and who recommended Titoni as the "Tristan Group's" lawyer, to serve as trustee for the funds.  Kondas is first mentioned in the McMarlins' response to the instant motion, but he is not a party to this action. Despite the fact that the McMarlins filed a Third Party Complaint against Titoni, they blame Kondas for what they describe as a "scam" involving the misuse of attorney trust accounts.  Since the McMarlins dealt with Titoni only through  Kondas, the McMarlins

_____

[1]  There appears to be a discrepancy in the amount of money at issue. Jackson states in the complaint that he gave the McMarlins $150,000. The third party complaint states that Maria McMarlin transferred $160,000, "which included Jackson's $100,000 principal investment," to Titoni's trust account. Thus, it would seem that the McMarlins transferred $60,000 of their own money to Titoni's account, leaving a question concerning where the remaining $50,000 of Jackson's funds went. For purposes of this motion, a definitive answer is unnecessary.

concede that they do not really know whether Titoni knew of the representations Kondas made to solicit funds for deposit in the trust account.  The Third Party Complaint states that Titoni initially promised to make restitution as a condition of keeping his license to practice law, but was eventually disbarred without making restitution.

Titoni denies any connection with the "Tristan Group" but states that he had at one time assumed fiduciary responsibility for funds belonging to the McMarlins when he was agent and counsel for a company called One AmTrade, a successor corporation of another company called First Ambassador, Inc.   The true relationship of the parties to these various entities need not be determined at this point, since it turns out not to have any bearing on the ultimate disposition of this motion on any of the grounds asserted.

### Discussion

In the present motion, Titoni seeks both a change of venue and dismissal of the Third Party Complaint.  He also contends that the case should be dismissed for failure to state a claim and for failure to join an indispensable party.

*Legal Standard*

Venue in a diversity case is governed by 28 U.S.C. § 1391(a) which states, in relevant part:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.[2]

---

[2]  The plain language of the statute indicates that any case based on diversity may be brought *either* where the defendants reside or a district where a substantial part of the events occurred, if both situations apply. See, Merchants Nat. Bank v. Safrabank (California), 776

3

If there is "no district in which the action may otherwise be brought," venue is proper in a judicial district "in which any defendant is subject to personal jurisdiction at the time the action is commenced."   According to the Third Party Complaint, Plaintiff Jackson resides in Arizona, the McMarlins live in New Mexico, and Titoni is a resident of Colorado. These facts are not disputed.

## I.      Application Venue Statute

Titoni does not explain whether he seeks a change under 28 U.S.C. § 1404(a) or § 1406(a).   Section 1406(a) concerns the transfer of a case from a forum of improper to a proper venue. Section 1404 concerns the transfer of a case from a forum of a proper venue to another forum of proper venue.   Beh v. Ostergard, 657 Supp. 173, 179 n.6 (10th Cir. 1987). Titoni not only challenges this Court's personal jurisdiction over him, but also asserts that all the business transactions relevant to this action took place in Colorado.   Thus, I construe his statements as a contention that neither the first nor second prongs of § 1391 apply to this case, and that venue is therefore improper because the case should have been filed in Colorado.

This Court has authority to either to dismiss or transfer a case for improper venue or lack of personal jurisdiction. See Doering et al v. Copper Mt. Inc., 259 F.3d 1202, 1209, n.3 (10th Cir. 2001).   There is some confusion over whether 1404(a), 1406(a) or 28 U.S.C. § 1631 governs a transfer when a transferor court lacks personal jurisdiction over a party.   The Tenth Circuit first addressed the question in Ross v. Colorado Outward Bound School, Inc., 822 F.2d 1524, 1526-27 (10th Cir.1987). Ross stated that 28 U.S.C. § 1631, enacted in 1982, controls the actions of a federal court "when it finds that it lacks jurisdiction but that another federal court has

_____

F.Supp. 538 (D.Kan. 1991).

jurisdiction." Section 1631 states that

> [w]henever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer the action . . . to any other such court in which the action . . . could have been brought at the time it was filed.

In <u>Viernow v. Euripides Development Corp</u>. 157 F.3d 785 (10th Cir. 1998), the Tenth Circuit noted that <u>Ross</u> held that § 1631 should be used in cases where personal jurisdiction was lacking even where the transferor court had subject matter jurisdiction. 157 F.3d at 793; <u>see also</u> <u>Wesley v. H & D Wireless Ltd. Partnership</u>, 678 F. Supp. 1540, 1543 (D.N.M. 1987) (Burciaga, J.). The venue statutes apparently allow some wiggle room for transfer, since § 1631 has not been used exclusively as the vehicle for transfer in cases where personal jurisdiction does not exist. In <u>Doering</u>, which was decided after both <u>Ross</u> and <u>Viernow</u>, the Tenth Circuit reaffirmed that § 1406(a) gave authority to a district court to transfer a case where personal jurisdiction was lacking, although New Mexico was the transferee court in that case. 259 F.3d 1202, 1209 n.3 (district court had authority "either to dismiss or transfer the case for improper venue *or* lack of personal jurisdiction (emphasis supplied) (citing <u>Goldlawr, Inc. v Heiman</u>, 369 U.S. 463, 466 (1962) ("Nothing in [the language of §1406(a)] indicates that the operation of the section was intended to be limited to actions in which the transferring court has personal jurisdiction over the defendants")). In <u>Beh v. Ostergard</u>, 657 Supp. 173, also decided after § 1631 was enacted, the Court effected transfer under § 1404(a), where venue was otherwise proper except for personal jurisdiction over defendants;[3] <u>see also</u> <u>Trierweiler v. Croxton and Trench Holding Corp</u>., 90 F.3d 1523, 1533 n.4 (10th Cir. 1996) (noting that transferor court had not determined whether § 1404(a) or § 1406(a) provided it with authority to transfer, and concluding that the

---

[3] Neither <u>Doering</u> nor <u>Beh</u> mentions § 1631 as an alternative transfer statute.

characterization of the transfer was "not controlling").

Further, although it would seem that § 1631 is most appropriately used when venue is otherwise proper (i.e., under § 1404(a)) except for personal jurisdiction, § 1631 has also been used where venue was improper for reasons other than lack of personal jurisdiction (i.e., under § 1406(a).[4]  Since both Viernow and Ross expressly hold that § 1631 is the proper vehicle for transfer when the transferor court lacks personal jurisdiction, I will construe the present motion as one seeking transfer for "want of jurisdiction" under 28 U.S.C. §1631.

Neither the McMarlins nor Jackson dispute that a substantial part of the events or omissions giving rise to the claim occurred in Colorado.[5] They do not dispute that the McMarlins transferred $160,000 (which included some of Jackson's money) to the Trust Account; that the Trust Account was located in Denver, Colorado; or that both Kondas and Titoni, who absconded with the funds, reside in Colorado.  Rather, Jackson and the McMarlins focus their arguments on Titoni's challenge to personal jurisdiction, to which I now turn.

## II.    Personal Jurisdiction over Titoni in New Mexico

To obtain personal jurisdiction over a nonresident defendant in a diversity action, a

---

[4]  Cmp., Viernow, 157 F.3d  785 (affirming transfer under § 1631 from Texas, where "most of the relevant event giving rise to the cause of actions occurred. . . ." to Utah), to Ross, 822 F.2d 1524 (case transferred under § 1631 from New York, where venue was improper under first and second prongs of § 1391(a), to Colorado).  What both of these cases had in common was a lack of personal jurisdiction over defendants.

[5]  The effect of these facts is that venue is otherwise proper in the District of Colorado under the second prong of § 1391. The issue of whether personal jurisdiction over parties exists in Colorado will be taken up later in the discussion.

6

plaintiff[6] must show that jurisdiction is legitimate under the laws of the forum state, and that it does not offend the due process clause of the Fourteenth Amendment.  Far West Capital, Inc. v. Towne, 46 F.3d 1071, 1074 (10th Cir.1995) (emphasis omitted); Kuenzle v. HTM Sport-Und Freizeitgerate AG 102 F.3d 453 (10th Cir. 1996). The New Mexico long-arm statute provides in relevant part:

> A. Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the courts of this state as to any cause of action arising from:
>
>> (1) the transaction of any business within this state;. . .
>>
>> (3) the commission of a tortious act within this state;
>
> C. Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction is based upon this section.

NMSA 1978 § 38-1-16 (1971).

New Mexico courts have consolidated both the "transaction of business" and "commission of a tortious act" with the due process standard of "minimum contacts." Doe v. Roman Catholic Diocese of Boise, Inc., 121 N.M. 738 (Ct.App.1996) (equating the "transaction of business" with the due process standard of  "minimum continuous acts"); Tercero v. Roman Catholic Diocese of Norwich, Connecticut, 132 N.M. 312, 316 (2002) (the analysis of whether defendant transacted business or committed a tortious act within New Mexico "merges with the inquiry regarding whether such activities constitute minimum contacts sufficient to satisfy due process concerns"); F.D.I.C. v. Hiatt,117 N.M. 461, 463-64 (1994) (not necessary to determine whether defendant

---

[6]  As Third Party Plaintiffs, the McMarlins have the same burden as would a plaintiff in showing that personal jurisdiction exists over a defendant, and will be referred to as "Plaintiffs" where appropriate.

transacted business within New Mexico "in any technical sense").  Thus, the relevant inquiry boils

down to (1) whether Titoni had minimum contacts with the State of New Mexico, such that he

could reasonably anticipate being sued here, and if so, (2) whether the cause of action in this case

arises from those contacts. The minimum contacts issue must be decided on the particular facts of

each case.  Purple Onion Foods, Inc. v. Blue Moose, Inc., 45 F.Supp. 2d 1255, 1257 (D.N.M.

1999).  Plaintiffs (Jackson as well as Third Party Plaintiffs McMarlins) have the burden of proving

jurisdiction exists over a nonresident defendant and that the exercise of personal jurisdiction

would not violate due process requirements.  McNutt v. General Motors, 298 U.S. 178, 189

(1936).

    The first part of the two-fold jurisdictional inquiry is to determine whether Titoni has

minimum contacts with New Mexico as the forum state "that he should reasonably anticipate

being haled into court" here. World-Wide Volkswagen, 444 U.S. 286, 297 (1979), cited in OMI

Holdings, Inc. v. Royal Ins. Co. of Can., 149 F.3d 1086 (10th Cir.1998).[7]  This consists of

determining whether Titoni purposefully directed his activities at New Mexico residents, i.e., the

McMarlins, and whether Titoni's actions created a substantial connection with the forum state.

---

    [7]  The "minimum contacts" standard may be met in two ways. A court may, consistent
with due process, assert specific jurisdiction over a nonresident defendant if the defendant has
"purposefully directed" his activities at residents of the forum, and the litigation results from
alleged injuries that "arise out of or relate to" Burger King, 471 U.S. at 472.  A court may also
maintain general personal jurisdiction over the defendant based on the defendant's general
business contacts with the forum state.  Helicopteros Nacionales de Colombia v. Hall, 466 U.S.
408, 415 (1984). However, general jurisdiction does not require that the cause of action must
arise out of or be connected with the defendant's contacts related to the forum.  See OMI
Holdings, 149 F.3d at 1091.  I need not inquire further into whether general jurisdiction exists in
this case for two reasons.  First, Plaintiffs do not assert that such jurisdiction exists (nor do I find
any). Second, a finding of general jurisdiction would not ultimately satisfy the requirement in New
Mexico's long-arm statute that the cause of action arise from either the transaction of business or
tortious activity within the state.

OMI Holdings, 149 F.3d at 1091.  The second part of the inquiry assumes that a defendant's actions create sufficient minimum contacts, and requires a court to consider whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice."  Id., (citations omitted).

1.     Minimum Contacts

In their Third Party Complaint, the McMarlins state that Titoni "represented to Hugh McMarlin" that their funds would be protected from loss in his trust account.  Third Party Complaint, ¶ 9.  Yet in the McMarlins' response to the instant motion, the McMarlins assert that they only indirectly communicated with Titoni, through Kondas, and that it was Kondas who represented that the trust principal would be safe in Titoni's account and that an accounting would be available upon demand. Also, according to the Third Party Complaint, Kondas, and not Titoni, contacted McMarlin in New Mexico and solicited funds for a "high yield investment program."

The exhibits attached to the response do not further the McMarlins' position.  These exhibits include a copy of the Trust Agreement between the McMarlins and Titoni for a trust account consisting of $160,000 which was located in Denver, Colorado (Ex. A-1); a wire transfer request by the McMarlins to Bank One in Denver, Colorado, for the benefit of Frank Titoni (Ex. A-2); and a letter from the Colorado Supreme Court Attorney Regulation Counsel sent in response to the McMarlins' request for investigation into Titoni's alleged conduct regarding the trust account (Ex. A-4). The allegations and evidence do not constitute a prima facie showing of personal jurisdiction in New Mexico sufficient to defeat Titoni's jurisdictional challenge.  See OMI Holdings, 149 F.3d at 1091 ("plaintiff may make prima facie showing by demonstrating, via

9

affidavit or other written materials, facts that if true would support jurisdiction over the defendant"). The McMarlins fail to link Titoni with any direct involvement in the transactions, or with themselves. Since it is the defendant's activities which provide the basis for personal jurisdiction, and not acts of other defendants or third parties, see Visarraga et al v. Gates Rubber Co. et al., 104 N.M. 143, 147 (1986), there is no factual basis for even a threshold showing that Titoni purposefully directed his activities at New Mexico residents. There is also no factual basis for attributing Kondas' conduct to Titoni, regardless of whether Titoni orchestrated the "scam," and whether Titoni was aware of what Kondas was doing.

Both Jackson and the McMarlins argue that New Mexico has personal jurisdiction over Titoni because Titoni conversion of their funds caused tortious injury in New Mexico. Plaintiffs' reliance on Wenz v. Memery Crystal, et al., 55 F.3d 1503 (10th Cir. 1995) for support of this argument is puzzling, because the case's holding erodes their legal stance. Robert Wenz, a resident of Colorado, was the victim of unauthorized disbursement of funds which he deposited in a client trust account belonging to a law firm in London. The Tenth Circuit ultimately determined that any alleged "injury" Wenz suffered in Colorado as a result of defendant's unauthorized use of funds was insufficient to invoke long-arm jurisdiction under either the "tortious conduct" or "transaction of business" prongs of Colorado's long-arm statute. Wenz argued that personal jurisdiction over the defendant was proper because Wenz was economically impacted in Colorado. The Tenth Circuit disagreed, finding that because the unauthorized disbursals occurred in London -- and not Colorado -- Wenz' economic injury was "indirect and remote." 55 F.3d at 1508.

The rationale in Wenz is applicable here. Both Jackson and the McMarlins allegedly

10

suffered economic losses similar to the loss experienced by Wenz, but mere economic impact in the forum is not sufficient to establish personal jurisdiction. See National Business Brokers, Ltd. v. Jim Williamson Productions, Inc., 115 F.Supp. 2d 1250, 1255 (D.Colo. 2000).  The only basis for personal jurisdiction over Titoni is that the money wired to Titoni's trust account was from a New Mexico resident as part of a trust agreement.  However,  the McMarlins' participation in that agreement does not confer jurisdiction over Titoni.  See Ruggieri v. General Well Service, Inc., 535 F.Supp. 525, 532 (D.Colo.1982) ("Merely because a forum-state resident is a party to the contract and it may be foreseeable that his rights in the forum state will be affected is not a sufficient basis for personal jurisdiction"); Encore Productions, Inc v. Promise Keepers, 53 F.Supp.2d 1101 (D..Colo.) (argument against personal jurisdiction carries more weight "when the only basis for personal jurisdiction rests on the mere fact that another party to the contract is a resident of the forum state"); Beck v. D'Amour, S.A.,  923 F.Supp. 196, 200(D.Utah, 1996) (fact that plaintiff "may be economically impacted" in Utah because he lives there, is "insufficient to establish personal jurisdiction" where tort of conversion and funds were located in Thailand).  Further, the rationale in Wenz is consistent with New Mexico's "place of the wrong" rule.  For purposes of the long-arm statute, a "tortious act" can occur in New Mexico when the actual harmful act originates outside the state, but the injury itself occurs inside New Mexico.  See Peralta v. Martinez, 90 N.M. 391, 393 (Ct.App.1977).  The place of the wrong is "the location of the last act necessary to complete the injury." Santa Fe Technologies, Inc. v. Argus Networks, Inc. 131 NM 772, 780 (Ct.App. 2001) (citations omitted).  In this case, the tortious act did not occur until the funds were outside of New Mexico, and in a Colorado account.  Thus, the "last act" necessary to complete injury to the McMarlins did not occur in New Mexico, but in

11

Colorado.

The McMarlins also uses <u>Santa Fe Technologies</u> to support their argument that economic impact establishes jurisdiction over Titoni in New Mexico.  In that case, plaintiff SFT ("Santa Fe Technologies") lost a bid on a federal contract as a result of alleged conspiring by defendants to substitute another New Mexico corporation in the bidding process.  However, the defendants in that case had considerably more connections to the forum state than Titoni does in the present case.  For example, one of the defendants had a cell phone with a New Mexico telephone number, and was carried on SFT insurance and health plans.  Another defendant paid a portion of two SFT employees' salaries.  Defendants also called into Albuquerque and discussed collaborating on the federal contract.  While lack of physical contact with the forum will not defeat personal jurisdiction, a defendant's conduct must be "purposefully directed" toward residents of the forum. <u>Santa Fe Technologies</u>, 131 N.M. 781.

The McMarlins lost their investment capital that was sitting in a Colorado account, due to Titoni's alleged tortious acts.  Viewing the facts in favor of the McMarlins, I do not find that Titoni's alleged conduct was purposefully directed toward New Mexico.  In addition, I do not find this conduct to have created a "substantial connection" with this state sufficient to conclude that Titoni should have reasonably anticipated being haled into a New Mexico court. <u>OMI Holdings, Inc. v. Royal Ins. Co. of Can.</u>, 149 F.3d 1086 (10th Cir.1998) (citing <u>World-Wide Volkswagen</u>, 444 U.S. at 297).  Therefore, Plaintiffs have failed the first part of the jurisdictional inquiry, i.e., a showing that Titoni had minimum contacts with New Mexico as the forum state.  However, even assuming that Plaintiffs have met the first part of the test, they cannot show the reasonableness of conferring jurisdiction, as I discuss next.

12

2.      <u>Reasonableness and Fair Play</u>

The Court considers several factors in determining whether the exercise of jurisdiction is so unreasonable as to violate "fair play and substantial justice." <u>OMI Holdings, Inc. v. Royal Ins. Co. of Canada</u>, 149 F.3d 1086, 1095 (10th Cir. 1998) (citing <u>Asahi Metal Industries Co. v. Superior Court of Calif.</u>, 480 U.S. 102. 109 (1987)).  These are: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

All of these factors point to the unreasonableness of exerting personal jurisdiction over Titoni in this forum.  Obviously, a determination that personal jurisdiction exists in New Mexico would result in an increased burden on Defendant, who lives in Colorado.  It would also seem that Colorado has a keen interest in resolving this matter, since the funds were converted in that state. The interests of both Plaintiffs as well as the judicial system would be best served in having the case heard in a forum that has personal jurisdiction over Titoni.  Since Jackson lives in Arizona, the burden of having to litigate in Colorado instead of New Mexico is insignificant.  The McMarlins are more substantially affected on this factor, but the advantages weigh heavily in favor of having the lawsuit tried in the place where Defendant lives (including Kondas), where the several corporations referenced in the pleadings are located, where the money was sent, and where the tortious injury occurred.  As to the last of the five factors, I see no cause for concern over New Mexico's sovereign interests in finding that this Court has no personal jurisdiction over Titoni.

In sum, the jurisdictional inquiry ends with my conclusion that even if Titoni's minimal contacts with New Mexico were considered sufficient, this Court's exercise of personal jurisdiction over that Defendant would  offend "traditional notions of fair play and substantial justice."

**III.     Whether Transfer to Colorado is Appropriate**

Having determined  that venue is improper in New Mexico, and that this Court lacks personal jurisdiction over Titoni, the last issue to be resolved is whether venue is proper in Colorado, including whether Colorado has personal jurisdiction over the parties.  See Viernow, 157 F.3d  at 792, n.16 (Transferor court is required to decide whether action could have been brought in the transferee court at the time it was filed).  For reasons already discussed, Colorado is otherwise a proper venue for this action under § 1391 because a "substantial part of the events or omissions giving rise to the claim" took place in that state. While Titoni concedes personal jurisdiction in Colorado, the McMarlins have not addressed the issue.

Colorado's long-arm statute has been interpreted to extend jurisdiction "to the fullest extent permitted by the due process clause of the fourteenth amendment to the United States Constitution." SCC Communications Corp. v. Anderson, 195 F.Supp.2d 1257 (D.Colo. 2002) (citing Safari Outfitters, Inc. v. Superior Court in and for the City and County of Denver, 167 Colo. 456, 448 P.2d 783, 784 (1968)). The jurisdictional analysis turns on the single inquiry of whether the exercise of personal jurisdiction over defendants comports with due process.  Id., OpenLCR.com, Inc. v. Rates Technology, Inc., 112 F.Supp.2d 1223 (D.Colo. 2000) (single question of whether the exercise of personal jurisdiction over defendant comports with due

process).[8]  The due process analysis mirrors that used under New Mexico law, i.e., asking

whether defendant has "certain minimum contacts with [the forum] such that the maintenance of

the suit does not offend 'traditional notions of fair play and substantial justice.'" SCC

Communications Corp. v. Anderson, 195 F.Supp.2d 1257.  Specific jurisdiction may be asserted

over a defendant who has "purposefully directed" its activities toward the forum state, and if the

lawsuit is based upon injuries that "arise out of" or "relate to" the defendant's contacts with the

state. Shepherd v. U.S. Olympic Committee, 94 F.Supp.2d 1136 (D.Colo. 2000) (citing Burger

King, 471 U.S. at 472).

Thus, the same jurisdictional analysis used with regard to Titoni applies to the McMarlins:

did the activities or conduct of the McMarlins constitute minimum contacts with Colorado

sufficient to satisfy due process concerns?  I find that they did.[9]  The McMarlins entered into an

agreement with a Colorado corporation that offered an investment scheme connected to a trust

account.  Before sending money to the account, the McMarlins made inquiries of Kondas (or

---

[8] Colorado's long-arm statute is similar to New Mexico's long-arm statute. See
Colo.Rev.Stat. § 13-1-124(1)(a)-(b) (1999):

> (1) Engaging in any act enumerated in this section by any person, whether or not a
> resident of the state of Colorado, either in person or by an agent, submits such person and,
> if a natural person, such person's personal representative to the jurisdiction of the courts of
> this state concerning any cause of action arising from:
>
> (a) The transaction of any business within this state;
>
> (b) The commission of a tortious act within this state. . . .

[9] The current venue statute was amended in 1990 so that it does not consider Plaintiff's
state of residence.  See Pub.L. 101-650 (Dec. 1, 1990).

Titoni, indirectly) about guarantees for the protection of the principal.  They wired $160,000 into Colorado with the intention that the funds would remain there and produce high-yield returns on the principal. When the investment "dried up," Response at 2, the McMarlins demanded a return of the principal, to no avail.  After Titoni allegedly converted the funds, the McMarlins made subsequent inquiries into Colorado having to do with getting Titoni to repay the funds.  They also initiated an investigation of the matter by the disciplinary branch of the Colorado State Bar, which was abandoned after Titoni was disbarred.  The McMarlins' conduct constitutes sufficient minimum contacts to confer a Colorado court with personal jurisdiction over them.

Not only did the McMarlins purposefully avail themselves of the privilege of conducting business activities in Colorado, but the degree of activity satisfies the requirements of due process. Even though the McMarlins' business transactions stemmed from a one-time investment in a Colorado trust account, the inquiries they made prior to wiring the funds, and after they discovered the funds had been converted, are sufficient as "minimum contacts" to subject the McMarlins to personal jurisdiction in Colorado. Cmp., e.g., Shaffer v. Clinton, 54 F.Supp.2d 1014 (D.Colo. 1999) (payment alone, through the use of bank facilities, is not enough to satisfy the requirements of due process); Bradshaw v. Baptiste, 23 F.Supp.2d 1236 (D.Kan. 1998) (no personal jurisdiction over defendant whose only "contact" with plaintiff was that defendant signed a shareholders' agreement along with the other defendants).

A consideration of the same factors used above which led to my determination that exercising jurisdiction over Titoni in New Mexico would be unreasonable, leads me now to conclude that personal jurisdiction over the McMarlins in Colorado would not violate due process notions.  Given the particular facts of this case, venue in Colorado is not only proper -- it is the

only sensible one.  If I had determined that Colorado did not have jurisdiction over the McMarlins, the Court would have no choice but to allow the case to proceed here with Titoni dropped from the case.  Thus, in order for Jackson and/or the McMarlins to sue Titoni (at whose door the proverbial, as well as literal, "bucks" stopped), it would be necessary for them to file a claim against Titoni in a Colorado court.  Because Plaintiffs would be required to file a separate action in another state in order to fully vindicate their rights on the same issue, it makes more sense to start in Colorado, and thereby optimize the Plaintiffs' interest in receiving convenient and effective relief.  I have little doubt that Plaintiffs would be hesitant to avail themselves of Colorado law or file in a Colorado court in order to obtain legal or equitable relief.  See, OMI Holdings, Inc., 149 F.3d 1086, 1095 (10th Cir. 1998) (The strength of due process factors sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required) (citing Burger King, 471 U.S. at 462).  I specially note that there is no prejudice to either Jackson or the McMarlins with regard to the viability of the lawsuit and any statute of limitations issue, since transfer under § 1631 ensures that the "action . .. shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which was actually filed in or noticed for the court from which it is transferred." Ross, 822 F.2d at 1525 (trial court erred in dismissing case based on statute of limitations under law of transferor court; action must be considered filed in transferee court from date complaint filed in transferor court).

Alternate Holdings

This case has other ramifications, not only because of the posture of its parties, but because the concepts of venue and personal jurisdiction are often confused.  See Moore's Federal

17

Practice, vol. 17, § 111.02(1)(b); Murphy v. Klein Tools, Inc., 693 F.Supp. 982, 985 (D.Kan.

1988) (quoting Ellis v. Great Southwestern Corp., 646 F.2d 1099, 1106 (5th Cir. 1981)

("[d]espite their apparent simplicity and exclusivity, these provisions have been the subject of 'a

nearly hopeless muddle of conflicting reasoning and precedent'").  Although the Court had

personal jurisdiction over the original parties in the case -- Plaintiff Jackson and Defendants Hugh

and Maria McMarlin -- venue was still improper because the action should have been filed in

Colorado, where a substantial part of events occurred.  In short, all roads in this case lead to

Colorado: even if personal jurisdiction had not been an issue, transfer to Colorado still would

have been appropriate under § 1406 because venue was improper here.

Assuming that venue was proper in New Mexico as well as Colorado, an analysis under

the other venue statute, 28 U.S.C. § 1404(a), would also suggest the same result.  Recognizing

that a "substantial part of the events" can take place in more than one forum, Colorado would still

make more sense than New Mexico as a forum for this action.[10]  Section 1404(a) governs changes

of venue "for the convenience of parties and witnesses, in the interest of justice."  Given that the

individuals who allegedly committed the tortious acts, as well as the accounts and companies

_____

[10]  The Court recognizes that the venue statute, 28 U.S.C. § 1391, allows for the possibility that a "substantial part of the events" can take place in more than one forum.  The facts in this case do not advocate that possibility.  However, as mentioned above, the statutory basis for Titoni's motion is not clear.  The Court would consider the following factors before transferring a case under § 1404(a): (1) the Plaintiff's choice of forum; (2) the accessibility of witnesses and other sources of proof, including the availability of  compulsory process to insure attendance of witnesses; (3) the cost of making the necessary proof ; (4) questions as to the enforceability of a judgment if one is obtained; ( 5) relative advantages and obstacles to a fair trial; (6) difficulties that may arise from congested dockets; (7) the possibility of the existence of questions arising in the area of conflict of laws; (8) the advantage of having a local court determine questions of local law; and (9) all other considerations of a practical nature that make a trial easy, expeditious and economical. Texas Gulf Sulphur Co. v. Ritter, 371 F.2d 145, 147 (10th Cir. 1967).

mentioned in the pleadings, are located there, the action "might have been brought" in Colorado, and thus the case could be tried on all relevant issues and with all parties included.

In sum, transferring this case to Colorado is appropriate because Colorado has personal jurisdiction over both Titoni and the McMarlins, because it is "in the interest of justice" under 28 U.S.C. § 1631, and because this action could have been brought in Colorado at the time it was filed or noticed, as required under § 1631.

## II.      Other arguments

Titoni offers alternate bases for dismissal of this action: that the Complaint fails to state a claim, and that Plaintiffs failed to join agents of certain corporations as indispensable parties.

1.      <u>Dismissal under 12(b)(6)</u>

A complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle it to relief. <u>American Home Assur. Co. v. Cessna Aircraft Co.</u>, 551 F.2d 804, 808 (10th Cir. 1977). On ruling on a motion to dismiss, the Court must accept the factual allegations of the complaint as true. <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421, <u>reh'g denied</u>, 396 U.S. 869 (1969); <u>Dewell v. Lawson</u>, 489 F.2d 877, 879 (10th Cir. 1974).

Titoni asks the Court to dismiss the case because he denies that he was ever counsel for the Tristan Group, and that he did not solicit funds from the McMarlins. In other words, Titoni's basis for dismissal is merely his denial of the allegations. Whether the allegations made in the Complaint by Jackson, and in the Third Party Complaint by the McMarlins are substantiated by further evidence, and what evidence is credible, are matters for trial. <u>See Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974) (The question is not whether plaintiff will ultimately prevail but whether the allegations entitle plaintiff to offer evidence to support its claim); <u>Gas-a-Car, Inc. v. American</u>

Petrofina, Inc., 484 F.2d 1102, 1107 (10th Cir. 1973).  I find that the Complaint and Third Party

Complaint withstand the motion to dismiss.  Accordingly, Titoni's Motion to Dismiss for Failure

to State a Claim is denied.

2.      Failure to Join Indispensable Party

        Titoni also contends that Plaintiffs failed to name agents, officers and directors of both

Tristan Group and first Ambassador, Inc. / One AmTrade, as parties to this action. Whether a

party is necessary and indispensable is determined by considering the factors set forth in

Fed.R.Civ.P. 19.  The inquiry is twofold. First, the court must determine whether a person is

necessary pursuant to Rule 19(a). Next, and only if the answer to the first question is in the

affirmative, the court must determine, under 19(b), whether to proceed in that person's absence if

her joinder is not feasible.  Thunder Basin Coal Co. v. Tuco, Inc., 156 F.R.D. 665, 671 (D.Wyo.

1994); Salt Lake Tribune Pub. Co. v. AT & T Corp., 320 F. 3d 1081, 1096 (10th Cir. 2003).

        A party is necessary within the meaning of Rule 19(a) if: (1) in the person's absence

complete relief cannot be accorded among those already parties, or (2) the person claims an

interest relating to the subject of the action and is so situated that the disposition of the action in

the person's absence may (i) as a practical matter impair or impede the person's ability to protect

that interest or (ii) leave any of the persons already parties subject to substantial risk of incurring

double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

        Titoni bears the burden of demonstrating that agents of the mentioned corporations are

necessary parties.  See Davis v. United States, 192 F. 3d 951, 958 (10th Cir. 1999).  He has not

done so.  First, although not specifically identified as such in the Third Party Complaint, Titoni

was allegedly involved as an agent for the Tristan Group.[11]  Further, there is no authority for the proposition that, in order to prove agency, the agent must be joined as a party to the action. See DeBaca, Inc. v. Montoya, 91 N.M. 419, 420, 575 P.2d 603, 604 (1978), cited in, Baer v. Regents of Univ. of Calif., 118 N.M. 685, 690 (Ct.App. 1994).   Titoni's motion is denied on this ground as well.

**III.**    **Motion for Extension of Time**

In light of the disposition of the Motion for Change of Venue and the Motion to Dismiss the Third Party Complaint, the McMarlins' motion for an extension of time will be denied as moot.[12]

### Conclusion

This Court lacks personal jurisdiction over Third Party Defendant Titoni.  Further, for the foregoing reasons, venue is improper in New Mexico because a substantial part of events or omissions giving rise to the claims took place in Colorado. The case will be transferred to the District of Colorado, pursuant to 28 U.S.C. § 1631.  The transfer of this case renders moot the motion for extension of time filed by the McMarlins.

**THEREFORE,**

**IT IS ORDERED** that the Motion by Third Party Defendant Titoni to Change Venue and

---

[11]  The degree of Titoni's involvement with the Tristan Group or any other group, need not be resolved at this early point in the litigation. Also, the fact that the Complaint or Third Party Complaint may need to be amended at a later time does not necessarily mean that the added parties are necessary and indispensable under Rule 19.

[12]  The motion is self-styled as a "Motion for Extension of Time to Respond to Motion for Summary Judgment." However, the Court docket does not indicate that a summary judgment has been filed by any party.

to Dismiss Third-Party Complaint (**Doc. 20**), is GRANTED IN PART and DENIED IN PART, in that the request for a change of venue is granted but dismissal is denied, as set forth above;

**IT IS FURTHER ORDERED** that the Motion for Extension of Time filed by Hugh and Maria McMarlin (**Doc. 29**) is DENIED AS MOOT;

**IT IS FINALLY ORDERED** that the Clerk of Court TRANSFER THIS ACTION pursuant to 28 U.S.C. § 1631 to the District of Colorado for further proceedings.

_____

UNITED STATES DISTRICT JUDGE